IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Kelley Craig-Wood, | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 2:10-cv-906 |
| | : |
| Time Warner NY Cable LLC, | : JUDGE JAMES L. GRAHAM |
| Defendant. | : Magistrate Judge Kemp |
| | : |

ORDER

This employment discrimination case is before the Court to consider the motion to compel filed by plaintiff Kelley Craig-Wood. Defendant Time Warner NY Cable LLC ("Time Warner") has opposed the motion. For the following reasons, the motion (#35) will be granted in part and denied in part.

## I. Background

The allegations as laid out in this order are taken from Ms. Craig-Wood's amended complaint and Time Warner's answer to that amended complaint and are considered true for purposes of this motion only. Ms. Craig-Wood, a Caucasian who is 45 years of age, filed her amended complaint on February 2, 2011, alleging claims for race and age discrimination and retaliation under Title VII, Ohio law, and the Age Discrimination in Employment Act (ADEA). She alleges that during her employment with Time Warner, her African-American supervisor who was under age 40, Bianca Beckley, treated her less favorably than her coworkers who were either African American or under age 40. Specifically, she alleges that Ms. Beckley engaged in fraudulent sales practices in order to increase sales for Time Warner and directed her subordinates to do the same. Ms. Craig-Wood refused to follow Ms. Beckley's

1

directions, but her coworkers Tenesia Tyus, an African American under age 40, and Carmella Weiser, under age 40, did follow these directions and engaged in fraudulent activity. Ms. Craig-Wood alleges that she was "harassed, disciplined, and threatened with termination" while these two coworkers suffered no adverse action. (Doc. #3, ¶7).

On October 2, 2008, Ms. Beckley issued Ms. Craig-Wood a written warning and placed her on six months probation. Time Warner asserts in its answer that this probation was because Ms. Craig-Wood was falsifying sales order forms. Ms. Craig-Wood complained to human resources and nothing was done. On March 18, 2009, Ms. Beckley issued Ms. Craig-Wood a final written warning for the same rule violation as her October 2, 2008 discipline. Time Warner asserts in its answer that this final warning was issued because Ms. Craig-Wood was falsifying sale order forms. Ms. Beckley also docked Ms. Craig-Wood's pay and vacation time. Ms. Craig-Wood was terminated on March 4, 2010.

According to Ms. Craig-Wood's motion to compel, on December 27, 2011 Ms. Craig-Wood served Time Warner with its first set of discovery requests. On January 20, 2012 Time Warner responded with some discovery, but insisted on a protective order before producing the remaining responsive documents. Ms. Craig-Wood agreed to the protective order sometime around March 14, 2012. On March 19, 2012, Ms. Craig-Wood received a disc with additional discovery responses from Time Warner.

Ms. Craig-Wood complains that Time Warner did not provide any information in its discovery responses regarding her "comparable coworkers." (Doc. #35, p. 3). She also complains that certain information is missing from Ms. Beckley's personnel file. (Doc. #35, p. 7). Time Warner opposes Ms. Craig-Wood's motion on the grounds that her requests are overly broad and not reasonably calculated to lead to the discovery of admissible

2

evidence under Fed.R.Civ.P. 26(b).

## II. Standard of Review

Under Fed.R.Civ.P. 37, a party may file a motion to compel discovery if the opposing party fails to respond to discovery requests including requests for production of documents. Fed.R.Civ.P. 37(a)(1), (a)(3)(B)(iv).

The Federal Rules of Civil Procedure authorize extremely broad discovery. United States v. Leggett & Platt, Inc., 542 F.2d 655, 657 (6th Cir. 1976). Fed.R.Civ.P. 26 is liberally construed in favor of allowing discovery. Dunn v. Midwestern Indemnity, 88 F.R.D. 191, 195 (S.D. Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499, 500-501 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." Coleman v. American Red Cross, 23 F.3d 1091, 1097 (6th Cir. 1994). A district court enjoys broad discretion in managing discovery. Lavado v. Keohane, 992 F.2d 601, 604 (6th Cir. 1993).

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. See Herbert

v. Lando, 441 U.S. 153, 177 (1979).  Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources.  See Fed.R.Civ.P. 26(b)(2).

Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules.  Rule 26(b) now permits discovery to be had without leave of court if that discovery is "relevant to any party's claim or defense. . ."  Upon a showing of good cause, however, the court may permit broader discovery of matters "relevant to the subject matter involved in the action." Id.

It is with these standards in mind that the Court will decide the current motion.

### III. Discussion

In an employment discrimination case such as this one, the outcome might turn on whether the plaintiff can identify one or more comparable employees who are similarly situated but received different treatment. See Bobo v. UPS, 665 F.3d 741, 753 (6th Cir. 2012).  These comparable employees must be similarly situated in all relevant respects. Id. at 751.  "The refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine." Id. at 753.  Ms. Craig-Wood's motion to compel argues Time Warner has not provided relevant information in response to her requests for production of documents regarding

4

"comparable coworkers." This Court will now consider each of these requests.

### A. Personnel Files, Job Descriptions, Job and Area Assignments, and Commissions

Document request nos. 6-9 and 11-26 ask for a copy of the personnel file, the job descriptions for all positions worked, the "job assignments" and "area" assignments, and the commissions paid to either Ms. Beckley, Tenesia Tyus, Carmela Weiser, Princess Powe, and Ty Harris. Mr. Harris was Ms. Beckley's supervisor. Ms. Craig-Wood has made no allegations against Mr. Harris and he is not mentioned in Ms. Craig-Wood's complaint. There is no reason to believe that any documents related to Mr. Harris are relevant to Ms. Craig-Wood's claims and therefore this Court will not order production of documents related to Mr. Harris at this time. This Court will consider the remaining requests in turn.

#### i. Personnel Files

Personnel files often contain highly personal and confidential information, such as unlisted addresses, telephone numbers, marital status, wage information, medical background, credit history, and other work-related problems unrelated to a plaintiff's case. Knoll v. AT&T, 176 F.3d 359, 365 (6th Cir. 1999). "Because of the extremely private nature of personnel files, courts generally do not order production of such files except upon a compelling showing of relevance by the requesting party." Stratienko v. Chattanooga-Hamilton County Hosp. Auth., No. 1:07-CV-258, 2008 WL 4442492, *5 (E.D. Tenn. Sept. 25, 2008). See also Jordan v. Kohl's Dep't Stores, Inc., No. 3:10-CV-0051, 2010 WL 3024868 (M.D. Tenn. July 28, 2010). While this Court will not order Time Warner to produce all the personnel files in their entirety, it will order it to produce additional relevant documents as detailed below.

5

Time Warner represents that it has provided Ms. Beckley's complete personnel file to Ms. Craig-Wood. In response, Ms. Craig-Wood argues that "Beckley's file should contain" additional documents (Doc. #35, p.7), but Time Warner asserts there are none. To resolve this disagreement, Time Warner will be ordered to re-check its records to assure Ms. Craig-Wood that it has provided the entire personnel file to her. It will also be ordered to provide an explanation to Ms. Craig-Wood as to why the documents she believes are missing are not contained in this personnel file.

Time Warner asserts that it reviewed the personnel files of Ms. Tyus, Ms. Weiser, and Ms. Powe to determine whether any disciplinary records exist. It has advised Ms. Craig-Wood that these three individual's personnel files do not contain discipline from Ms. Beckley. Thus, Time Warner argues there is nothing else relevant in the files to produce.

Although Time Warner correctly concludes that discipline from Ms. Beckley against these individuals would be relevant, that is not the only relevant piece of information potentially contained in these personnel files. Ms. Craig-Wood has alleged not only that Ms. Beckley discriminated against her, but also that Ms. Craig-Wood's complaint to human resources was ignored. She also alleges that Ms. Beckley issued Ms. Craig-Wood a final written warning "in retaliation" for her having made the complaint to human resources. (Doc. #3, ¶ 8). Thus, if the personnel files of these coworkers contain some evidence that these coworkers ever complained to human resources but were not disciplined for doing so, or that their complaints to human resources were properly investigated, such documents would be relevant to Ms. Craig-Wood's allegations and must be produced.

In addition, Time Warner has asserted in its answer that Ms. Craig-Wood was disciplined and given a final written warning

because she was falsifying sales order forms. (Doc. #7, ¶8).  If Ms. Craig-Wood can show that her coworkers were engaged in similar activity, but were not disciplined for it, it may support her claim that the real reason for Ms. Craig-Wood's discipline was discrimination or retaliation.  Thus, if there is any information in these personnel files indicating that these coworkers falsified documents or were otherwise engaged in fraudulent activity, that information must also be produced to Ms. Craig-Wood.

Therefore, Time Warner is ordered to produce any documents in the personnel files of Ms. Tyus, Ms. Weiser, or Ms. Powe that demonstrate any complaints these individuals made to human resources, any discipline they received thereafter, and any investigation human resources conducted in response to their complaints.  Time Warner must also produce any documents which might show that these coworkers were engaged in fraudulent activities and whether or not they were disciplined for those activities.

### ii. Job Descriptions for All Positions Worked

Ms. Craig-Wood has asked for the job descriptions for all positions worked by Ms. Beckley and the above named coworkers. Time Warner asserts that it has produced the job description for Ms. Craig-Wood and that the other three coworkers held that same position as Ms. Craig-Wood at the time of her allegations, so that job description applies equally to them.  As to any other positions that these individuals have held, Time Warner argues these job descriptions are not relevant to Ms. Craig-Wood's claims. This Court agrees with Time Warner.  Any job descriptions for positions that these individuals held before or after the time they held the same position as Ms. Craig-Wood have no bearing on Ms. Craig-Wood's claims that Ms. Beckley and the human resource department discriminated or retaliated against her

7

because of her race and age.

### iii. Job Assignments and Area Assignments

Ms. Craig-Wood has asked for documents regarding "job assignments" and "area" assignments for Ms. Beckley and the above named coworkers. Without additional facts, it is difficult to know what is meant by the terms "job assignments" and "area" assignments. Ms. Craig-Wood asserts in her motion that this information will show the "significant difference in the production of coworkers assigned to profitable areas as well as Plaintiff being assigned to unprofitable areas. Documents and statistics will show that the number of sales both by time and distance and services sold by Plaintiff's coworkers was fraudulent." (Doc. #35, p.7).

Ms. Craig-Wood, however, has not asserted a claim that she was discriminated or retaliated against by being placed in an unprofitable area, so these documents are not relevant for this purpose. If there are documents that indicate that services sold by Ms. Craig-Wood's coworkers were fraudulent, however, then those documents would be relevant to Ms. Craig-Wood's claims because they might demonstrate that she was disciplined or terminated for falsifying documents when others were not.

Time Warner has interpreted the terms "job assignments" and "area" assignments to mean that Ms. Craig-Wood is requesting customer addresses to which each coworker was assigned. Time Warner maintains that it does not have any record of the specific addresses assigned to these three individuals during that period because they no longer exist. The only potential documents Time Warner has that might be responsive are document reflecting the number of addresses assigned to a particular coworker. To the extent these records are available, Time Warner is ordered to produce them.

#### iv. Commissions

Ms. Craig-Wood asks for copies of "all commissions paid" to Ms. Beckley and the above named coworkers. Time Warner argues that these requests are not likely to lead to the discovery of admissible evidence because Ms. Craig-Wood has not argued she was discriminated against or retaliated against by being paid less commission than these individuals. However, these commission documents might demonstrate that Ms. Beckley and these coworkers were engaged in fraudulent activity and were therefore paid higher commissions. If Ms. Craig-Wood can show that her coworkers or her supervisor were engaging in fraudulent activity, that information may support Ms. Craig-Wood's claim that the real reason she was disciplined or terminated was not for fraudulent activity but because of discrimination or retaliation. Therefore, this information is relevant and must be produced.

### B. Unemployment Claim Files

In document request no. 28, Ms. Craig-Wood has asked for copies of all documents provided to the Ohio Department of Job and Family Services and/or the Unemployment Compensation Review Commission which explain the reason for the termination of Ms. Craig-Wood, Bianca Beckley, Tenesia Tyus, Carmella Weiser, and Ty Harris.

As noted above, Ty Harris is not involved in Ms. Craig-Wood's allegations nor is he a comparable employee. Therefore, the reasons for his termination are irrelevant to this case.

As to the remaining individuals listed, Ms. Craig-Wood is entitled to these documents because they may demonstrate that Ms. Beckley as well as coworkers Ms. Tyus and Ms. Weiser were or were not terminated for engaging in fraudulent activity. If Ms. Craig-Wood can demonstrate that Ms. Beckley was herself engaging in fraudulent activity, then it may support her claim that the reason for Ms. Craig-Wood's termination was not fraudulent

activity, but instead discrimination and retaliation. Similarly, if she can demonstrate that her coworkers were terminated for reasons other than fraudulent activity, it may support her claim that discrimination and retaliation were the real reason for Ms. Craig-Wood's termination.

## IV. Conclusion

Ms. Craig-Woods motion to compel (Doc. #35) is granted in part and denied in part. Time Warner is ordered to produce documents to Ms. Craig-Wood consistent with this opinion within fourteen days.

## V. Procedure on Objections

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A); Fed.R.Civ.P. 72(a); Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge